# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>JESUS ANTONIO MONDACA, SR.,<br><br>          Defendant. | Case No.: 89-CR-0655 DMS<br><br>**ORDER GRANTING MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018** |

  Pending before the Court is Defendant Jesus Antonio Mondaca's motion to reduce sentence pursuant to the First Step Act of 2018 ("FSA"). Plaintiff United States of America did not file an opposition, and Defendant filed a reply. The motion was argued on February 27, 2020, at which time James Fife of Federal Defenders of San Diego, Inc. appeared for Defendant. Michael Lasater appeared for Plaintiff United States of America and affirmed Plaintiff's non-opposition to the motion. For the following reasons, the motion is granted.

## I.
## BACKGROUND

  Defendant Jesus Antonio Mondaca is currently serving a life sentence at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). On May 13, 1991, the Honorable Jack E. Tanner sentenced Defendant to "life without parole" for conspiracy to

possess cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1) and 846.[1] (Ex. A to Mot. To Red. Sent. ("Mot.").) Defendant was arrested on June 13, 1989, following a recorded conversation with an informant about selling 15 kilograms of cocaine. (Ex. C. to Mot., Presentence Report ("PSR") at 3.) Because Defendant was the subject of an informant sting operation, he was arrested before any drugs changed hands or were otherwise seized. (*Id.*) Defendant pleaded not guilty to the indictment and thereafter was convicted by jury on March 21, 1991. (*Id.* at 1.)

The Probation department calculated a guideline range of 360 months to life but noted a minimum mandatory life sentence would be triggered if a sentencing enhancement for two prior drug offenses was applied. (Ex. C. to Mot., PSR at 1, 8.)[2] The PSR notes Defendant had six criminal history points, stemming from the following convictions: (1) a 1980 drug conviction under California Health and Safety Code § 11352, for which Defendant was granted probation and sentenced to 365 days in county jail (two points); (2) a 1982 drug conviction under California Health and Safety Code § 11359, for which Defendant was sentenced to two years in state prison (three points); and (3) a misdemeanor driving under the influence ("DUI") conviction from 1982 (one point). (PSR at 4–5.) The sentencing enhancement was applied by Judge Tanner. Accordingly, Defendant's two prior drug felony convictions simultaneously served: (1) to enhance the statutory range under §§ 841(b)(1)(A)(ii) and 851 to a minimum mandatory life sentence, and (2) as predicate offenses for a career offender enhancement pursuant to § 4B1.1 of the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), raising

---

[1] Judge Tanner served as a United States District Judge for the Eastern and Western Districts of Washington. He sat by assignment for the Southern District of California, where he sentenced Defendant.

[2] The PSR states, "an Information and Notice of Enhanced Penalties as a result of prior felony convictions was filed. If the Court makes a true finding with regard to this issue, the penalty changes to a minimum mandatory life term." (Ex. C to Mot., PSR at 8.)

the offense level from 34 to 37 and doubling the criminal history category from III to VI. (*Id.* at 6, 8–9.)

The PSR also notes that Defendant had been actively engaged in drug trafficking "since at least the mid to late 1970's[,]" including an incident involving "five tons of marijuana which were delivered in three shiploads to Ventura County." (*Id.* at 3.) The PSR further notes Defendant was involved in selling "100-pound quantities of marijuana in San Diego that he smuggled into the United States from Mexico in cars and on rafts[,]" (*Id.* at 3–4), and trafficking "multi-kilograms of cocaine and hundreds of pounds of marijuana between 1984 and 1986." (*Id.* at 4.) Finally, the PSR notes that during the commission of the crime at issue, Defendant "admitted much of his past drug trafficking activities and said [on a recorded conversation] he wanted to kill the first informant[,]" after learning that informant had been working for the government. (*Id.* at 3.)

Defendant has been incarcerated continuously since his arrest on June 13, 1989. During his time in prison, Defendant was cited for two infractions: one for possessing intoxicants in 1992, and another for failing to stand for count in 2008. He has remained "incident report free" since 2008—some 12 years. (Ex. F to Mot. at 1.) Defendant continues to work on self-development and personal growth during his time in prison, having completed 57 courses in an array of subjects, including "Microsoft Office Complete," "Ace Legal Research," "Advanced Yoga," and "Disability Awareness." (Ex. F. to Mot. at 1–2.) He also completed his General Educational Development ("GED") and acquired his high school equivalency. (*Id.* at 1).

In December 2018, Defendant underwent a suicide risk assessment after being physically assaulted by an approximately thirty-year old inmate. (Ex. F to Mot. at 1.) The BOP's Psychology Services record notes Defendant previously was "able to maintain confidence in his ability to physically protect himself and keep himself safe" during his incarceration, but the assault incident was "particularly overwhelming and depressing" for Defendant because he realized he may no longer "be able to maintain his own safety." (*Id.*) Thereafter, Defendant was placed on suicide watch. Defendant has also received treatment

for age-related conditions, is "enrolled in general chronic care clinic," and was diagnosed with "benign prostatic hypertrophy," "mild-to-moderate degenerative disc disease," and "some decrease in memory." (Ex. D to Mot.) He now moves the Court for compassionate release under the FSA due to his age, declining physical and mental health, time in custody, and other relevant sentencing factors set out in the Act and United States Sentencing Guidelines.

## II.
## DISCUSSION

On December 21, 2018, the FSA was signed into law by Congress. *See* Pub. L. 115-391, 132 Stat. 5194, 5239 (2018). Among the criminal justice reforms implemented by the Act, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to move the district court for compassionate release after exhausting the Bureau of Prison ("BOP") compassionate release process. "Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." *Brown v. United States,* 411 F.Supp.3d 446, 452 (S.D. Iowa 2019) (citing 18 U.S.C. § 3582(c)(1)(A)). Defendant submitted his request for compassionate release to the warden on August 19, 2019. (Mot. at 2.) Because more than 30 days have passed without a response from the warden, the Court has jurisdiction to hear the motion.

The FSA allows a court to reduce a defendant's sentence for "extraordinary and compelling reasons[,]" if the reduction complies with 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress does not define what constitutes "extraordinary and compelling" reasons; instead, it defers consideration of the matter to the Sentencing Commission. *See* 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.")

///

4

89-cr-0655(DMS)

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. *See Brown,* 411 F.Supp.3d at 448-49 (summarizing U.S.S. G. § 1B1.13 cmt. n. 1(A)–(D)). One of those scenarios applies here. Specifically, § 1B1.13 cmt. n. 1(B) provides that "extraordinary and compelling reasons" exist where a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." The Commission's policy statement also directs district courts when considering a motion for sentence modification to determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" *Id* § 1B1.13(2).

Notably, the Commission's policy statement was not amended after enactment of the FSA. Accordingly, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release[,]" (*see Brown*, 411 F. Supp. 3d at 447 (canvassing district court decisions)), because the Commission "never harmonized its policy statement with the FSA." *Id.* at 449. These courts, therefore, conclude that the district court may "consider anything" when assessing a defendant's motion for compassionate release and determining whether "extraordinary and compelling reasons" exist. *Id.* at 450-51 (stating district judges are permitted under FSA to "consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'"). On the other hand, other courts have concluded "a judge may not stray beyond the specific instances listed in § 1B1.13 cmt. n. 1(A)–(C)." *Id.* at 450 (citing *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019)). This Court need not address the issue because, as noted, at least one of the specific scenarios set out in the Commission's policy statement applies here. *See id.* at 451 (district courts "still must act in harmony with any sentencing policy guidelines that remain applicable and the § 3553(a) factors.")

/ / /

/ / /

## A. Extraordinary and Compelling Reasons for Sentence Reduction

Section 1B1.13 of the Guidelines provides that "extraordinary and compelling reasons exist" under the following circumstance:

> **Age of the Defendant**. —The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n. 1(B).

Defendant meets these criteria. He is 77 years old and he has served at least 10 years of his term of imprisonment. He also has a well-documented history of serious deterioration in physical and mental health which is age-related. He is enrolled in a general chronic care clinic, and presents several age-based conditions, including "benign prostatic hypertrophy," "mild-to-moderate degenerative disc disease," and "decrease in memory." (Mot. at 7.) He was placed on suicide watch in December 2018, after being assaulted. (Ex. F to Mot.) As a result, he has "become increasingly vulnerable to victimization within the correctional facility[,]" (Ex. G to Mot. at 36), and has "withdrawn to his cell out of fear of interaction with other inmates[.]" (Mot. at 8.) These facts are not disputed and are sufficient to show Defendant is experiencing serious deterioration in physical and mental health because of the aging process. Defendant has therefore presented extraordinary and compelling reasons in support of his motion.

## B. Danger to Others or the Community

Even where extraordinary and compelling reasons exist, the district court must consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1)(A), (2), cmt. n. 1. To make this assessment, the Court is directed to the factors set out in § 3142(g), including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and

drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose. These factors are addressed in turn.

1. Nature and Circumstances of the Offense Charged

Defendant's conviction for conspiracy to possess cocaine with intent to distribute is a non-violent drug offense. While Defendant's statement to the government informant about "wanting to kill" another informant is of concern, (PSR at 3), Defendant has no history of committing or otherwise engaging in acts of violence. And although Defendant's crime involves controlled substances and the relevant conduct attributed to Defendant preceding the conviction reveals a deeply entrenched drug trafficker, neither violence nor weapons has ever been noted. Compassionate release has been denied in cases involving particularly violent underlying crimes, (*see, e.g.*, *Applewhite*, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (seven armed robberies), but that is not the case here. The nature and circumstances of the offense charged do not reveal a propensity for violence or danger to others.

2. History and Characteristics of the Person

The history and characteristics of a defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse." *See Spears*, 2019 WL 5190877 at *4 (D. Or. Oct. 15, 2019). Here, Defendant has endeavored to reform. While he is a repeat offender, his time in prison is characterized by many years of counseling and coursework designed for self-improvement, general education and vocational training. This is commendable for any inmate, but particularly so for an inmate initially sentenced to a lifetime of imprisonment with no hope for life outside of confinement.

Defendant has suffered two infractions while in prison: possession of intoxicants and failing to stand. (Ex. I to Mot.) While possession of intoxicants is troubling and perhaps indicative of a sense of hopelessness at the time, that infraction occurred more than 28 years ago and did not repeat. Defendant's failure to stand is explained by a failure to hear, rather than insolence. (*Id.*) Moreover, Defendant has been incident free for over 12 years.

*See* (Ex. F to Mot. at 31) (prison records note absence of "disruptive behavior"). He has also taken over 57 vocational and health related classes and acquired his GED.

Defendant's physical and mental condition has declined significantly. As discussed, that decline has placed him in danger of other inmates and triggered a suicide assessment.

Defendant has numerous family ties, including family members who will provide for him. He has a daughter in Chula Vista, California, and she has offered her home and a job as a personal assistant. (Ex. G to Mot. at 36.) Defendant's son Consuelo Mondaca and brother Raul Mondaca, who both live in Tijuana, Mexico, have also offered housing and employment. (*Id.*) Before incarceration, Defendant attended community college and worked as a lather, truck driver, milkman, and salesman. (PSR at 6.) He was skilled and industrious, and these attributes may serve him well.

Finally, Defendant's criminal history is nearly 40 years old and non-violent. Defendant's two prior felony offenses include a 1980 conviction for sale of cocaine and a 1982 conviction for possession of controlled substances for sale. Defendant also has a misdemeanor DUI from 1982. These convictions are serious, but they are relatively few, dated, involve relatively small quantities of contraband, and were sentenced through grants of probation and a "low-term" (two years) prison sentence. Standing alone, there is nothing aggravated about the prior convictions.

3. Nature and Seriousness of Danger Posed by Release

The final factor is the "nature and seriousness of the danger to any person or the community" that release would pose. 18 U.S.C. § 3142(g)(4). Defendant's health has declined significantly, as discussed. He also has a decades-long history of non-violence and rehabilitative efforts at the BOP. And while Defendant is not a United States citizen, he appears to have a colorable claim for derivative citizenship based upon his mother's status. (*See* Mot. at 10, n.4 (noting derivative citizenship was granted to Defendant's brother)). Pending his citizenship application, Defendant will either be removed to Mexico or paroled into the United States—where family awaits in both locations. The hope of U.S. citizenship can only serve to further motivate Defendant's seamless integration into

8

society. In addition, Defendant will be supervised by the Probation Department upon his release from custody through a five year term of supervised release, as reflected in the Amended Judgment issued concurrently with this Order.

On balance, the foregoing factors weigh heavily in favor of Defendant. The Court finds Defendant is not a danger to the safety of any other person or to the community upon release.

**C. Consideration of the § 3553(a) Factors**

Finally, Defendant contends his release would serve the purposes of § 3553(a). (Mot at 12.) Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary, … (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). The sentencing court is also directed to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *Id.* § 3553(a)(1), (6). Some of these factors are encompassed by the § 3142(g) factors above.

1. Punishment, Deterrence, Protection of Society, and Rehabilitation

Defendant contends a three-decades sentence for conspiracy to traffic cocaine is sufficient to address the seriousness of the offense, promote respect for the law, deter Defendant and others, provide just punishment, and protect the public from further crimes of Defendant. (Mot. at 14) (citing § 3553(a)(2)(A)-(C).) The Court agrees. Defendant's time in prison—more than 30 years—is certainly sufficient to satisfy these factors. The important goal of rehabilitation has also been adequately addressed through Defendant's educational and vocational training and personal growth while in custody. *See* 18 U.S.C. § 3553(a)(2)(D).

2. <u>Nature and Circumstances of Offense & History and Characteristics of Defendant</u>

As discussed, the nature and circumstances of the offense are serious but non-violent. The Court's findings regarding Defendant's lack of danger to others or the community upon release also apply here. Defendant's physical and mental condition, as well as his long period of incarceration and efforts at self-improvement and personal growth, strongly indicate Defendant will not recidivate. Defendant is 77 years old and in the class of prisoners least likely to recidivate. *See* U.S. Sentencing Comm'n, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS, 22–27 (Dec. 2017).

		3. <u>Comparative Sentencing Analysis</u>

Finally, the discrepancy between the sentence Defendant received in 1991 and the sentence he would receive if judgment were pronounced today is significant. In 1991, Defendant's two prior "serious drug" felonies served to enhance the statutory range "under §§ 841(b)(1)(A)(ii) [and] 851 to a mandatory life without parole" and "as predicates for a career offender enhancement under § 4B1.1, raising the offense level from 34 to 37 and doubling the criminal history category from III to VI." (Mot. at 5) (citing PSR 8–9.) Under current law, a "serious drug felony" is a drug offense for which the offender "served a term of imprisonment of more than 12 months[.]" 21 U.S.C. § 802(57)(A). Defendant served eight months (with good-time credits) for his 1980 conviction, so that conviction would no longer qualify as an enhanceable offense. The only conviction that qualifies for enhancement as a "serious drug felony" is Defendant's 1982 offense for possession of cocaine for sale—for which Defendant received a two-year prison sentence. That conviction could trigger a 15-year (180 months) minimum mandatory sentence under § 841(b)(1)(A)(viii) ("such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment"), but not a minimum mandatory life term. Similarly, his base offense level would be 32. U.S.S.G. § 2D1.1(c)(4). With a base offense level 32 and criminal history category III, Defendant's guideline range today would be 151 to 188 months—though the minimum mandatory would become the guideline range

for a low end of 180 months. Defendant has been in custody for over 365 months, more than twice the term he would likely receive under current law.

A reduction in Defendant's sentence to time served is consistent with the factors set forth in 18 U.S.C. § 3553(a)—specifically, § 3553(a)(2)(A) ("the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense) and § 3553(a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"), because if Defendant were sentenced today under the enhancement, he would likely receive a sentence of 15 years, the minimum mandatory. Government counsel also noted at the hearing that the enhancement could well *not* be charged in the exercise of prosecutorial discretion, in which case Defendant's sentence likely would be less than 15 years and within the guideline range of 151 to 188 months. As such, the disparity in sentences from 1991 (when Defendant was sentenced) to that likely imposed today under current law weighs in favor of compassionate release. *See also United States v. Urkevich*, 2019 WL 6037391, at *1–3 (D. Neb. Nov. 14, 2019) (sentence reduction warranted where defendant's 848 months sentence would result in 368 months sentence under present law).

In sum, the § 3553(a) factors above are met through a time served sentence. The Government agrees, particularly in light of the sentence disparities under § 3553(a)(6).

### III.

### CONCLUSION AND ORDER

The Court finds that sentence modification is warranted for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 cmt. n. 1(B); upon release, Defendant will not pose a danger to any other person or the community under 18 U.S.C. § 3142(g); the 18 U.S.C. § 3553(a) factors support a sentence reduction, and compassionate release is consistent with the Sentencing Commission's policy statements in U.S.S.G. § 1B1.13. Accordingly, it is HEREBY ORDERED, as follows:

1. Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (ECF No. 242), is GRANTED;

2. Defendant's sentence of life imprisonment is reduced to time served, effective upon filing of this Order and as reflected in the Amended Judgment issued concurrently herewith; and

3. The BOP shall forthwith release Defendant to the custody of the United States Department of Homeland Security for removal or parole in its discretion.

**IT IS SO ORDERED.**

Dated: March 3, 2020

Hon. Dana M. Sabraw
United States District Judge